UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FAREED ALSTON,                            )
                                          )
        Plaintiff,                        )
                                          )
    vs.                                   )        Case No. 4:18-cv-01569-AGF
                                          )
CITY OF SAINT LOUIS, MISSOURI, et         )
al.,                                      )
                                          )
                                          )
        Defendants.                       )

## MEMORANDUM AND ORDER

Plaintiff Fareed Alston, a filmmaker, claims that while documenting protest activity

following the September 15, 2017, verdict in *State of Missouri v. Stockley*,[1] St. Louis

Metropolitan Police Department (SLMPD) officers unlawfully "kettled,"[2] pepper sprayed,

assaulted, and arrested him.  Alston brings this civil rights action under 42 U.S.C. § 1983

against several SLMPD officers alleged to be involved in the relevant events, as well as the

City of St. Louis.  Alston twice amended his complaint, following extensive discovery to

identify unnamed Doe defendants.  This is one of several cases arising out of SLMPD

officers' conduct with respect to the *Stockley* protests.

---

[1]     In *Stockley*, the Circuit Court of the City of St. Louis acquitted police officer Jason Stockley of charges arising from the death of Anthony Lamar Smith.  *State v. Stockley*, No. 16220CR02213-01 (Mo. 22nd. Jud. Cir. Sep. 15, 2017).

[2]     According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of demonstrators or protestors without providing a means of egress.

The matter is now before the Court on the motion (ECF No. 134) of all of the Defendants except the City[3] to dismiss Alston's Second Amended Complaint.  For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the Second Amended Complaint are as follows.  Following the announcement of the *Stockley* verdict on September 15, 2017, public protests began at multiple locations in the City and continued for several days.  Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals."  Second Am. Compl., ECF No. 130 at ¶¶ 23, 24.

Alston is a filmmaker and video journalist who documents protests in St. Louis in his role as the sole proprietor of City Productions and Publishing.  On September 17, 2017, Alston attended a protest in the downtown area of the City in order to document police interactions with protestors.  He was wearing a press pass and carried a camera around his neck.  Without first providing a warning, a command, or an opportunity to leave the area, SLMPD officers kettled Alston and others at the intersection of Washington Avenue and Tucker Boulevard.  Alston filmed these activities.  Alston then approached the officers, explained that he was media, and asked to leave the area.  An officer, who is not identified in the complaint, pushed Alston back into the kettle with a baton.

---

[3]     Each of the individual Defendants is sued in his or her individual capacity.  The City has answered the Second Amended Complaint and has not joined the motion to dismiss.

Moments later, Defendant Tom Long approached the group of kettled citizens, who were attempting to comply with police orders and, without warning, deployed pepper spray from a large canister of mace known as a "fogger" into the crowd. The pepper spray struck Alston in the face, and Alston fell to the ground. A number of police officers, including Defendant Christopher Myers, then surrounded Alston and kicked and hit Alston while Alston was laying on the ground. [4]  One officer, who is not identified in the complaint, deployed another round of pepper spray which hit Alston in the side of the face. The kicking and pepper-spraying continued for over two minutes until other individuals began to fall on top of Alston.

Myers and the other officers then raised Alston's arms, turned Alston onto his stomach, and zip-cuffed Alston tightly. A few minutes later, another unidentified officer put two more sets of zip ties on Alston, for a total of three zip ties, causing Alston pain.

An unidentified officer told Alston that "this is what [he] got for wanting to videotape the police." ECF No.130 ¶ 160. Another unidentified officer grabbed Alston's hair to pull his head back and ripped Alston's camera from around his neck, slammed the camera on the ground, and powered it off. Myers took a photo with Alston. Alston told Myers, Defendant Michael Marks, and other officers that he was in pain from the pepper spray and zip ties, that he felt like he could not breathe, and that his eyes were hurting. These officers ignored his complaints, and another unidentified officer poured water in Alston's face, which made the burning worse.

---

[4]     Alston asserts that he was not able to identify the other officers who were around him during these events in part because the pepper spray obstructed his vision.

3

Alston was then put into a police wagon and held in a crowded cell for nearly 24 hours.  He was released from jail on September 18, 2017, around 9:00 p.m..  He was not told why he had been arrested or what he was being charged with.  Alston's camera was returned upon his release, but the camera had been badly damaged.

Alston alleges that "[u]pon their release, all of the arrestees were given summonses showing that they had been charged with 'failure to disperse' [and] were instructed to appear at St. Louis City Municipal Court on October 18, 2017." *Id.* ¶ 114.  However, on October 13, 2017, the City Counselor's office issued a letter to arrestees stating that it was "still reviewing the evidence" to decide whether to file charges and that the arrestees were "released from any obligation to appear in Municipal Court on October 18, 2017." *Id.* ¶ 122.  There is no indication in the complaint that Alston was ever formally charged.

Alston claims that he was not engaged in unlawful activity at any time during his encounter with police.  Alston further alleges that during and after the arrest, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" *Id.* ¶¶ 101, 165.

With respect to the unidentified officers, Alston alleges that he has been unable to identify these officers because officers removed their name tags from their uniforms and wore masks to conceal their faces.  Alston further alleges that, in violation of its policies, the City failed to properly document the arrests and the various uses of force against Alston and other persons arrested that evening.  Alston alleges that, but for the actions of the individual officers and the City, these officers could have been identified.

4

As noted above, Alston's Second Amended Complaint names the City and several SLMPD officers and asserts the following claims:

Count 1: Unreasonable seizure under the Fourth and Fourteenth Amendments against the "Defendant Officers"[5];

Count 2: Violations of free speech, press, association, and assembly under the First and Fourteenth Amendments against the Defendant Officers;

Count 3: Conspiracy to deprive civil rights against the Defendant Officers and Defendant Lt. Col. Lawrence O'Toole[6];

Count 4: Failure to train, discipline, and supervise, and a custom of unconstitutional seizures and using excessive force against the City;

Count 5: Assault in violation of Missouri law against the Defendant Officers;

Count 6: False arrest in violation of Missouri law against the Defendant Officers;

Count 7: Abuse of process in violation of Missouri law against the Defendant Officers and O'Toole;

Count 8: Malicious prosecution in violation of Missouri law against the Defendant Officers and O'Toole;

---

[5]    The Second Amended Complaint defines the "Defendant Officers" as the individuals listed in paragraphs 12 through 19 of the complaint: Gerald Leyshock, Timothy Sachs, Daniel Howard, Randy Jemerson, Brian Rossomanno, Michael Marks, Christopher Myers, a list of more than 50 named Lieutenants and Sergeants who are described collectively as "Supervisor Officers"; and other unidentified SLMPD officers who participated in the conduct described but could not be identified for the reasons stated above.  ECF No. 130 at p. 2 n.1; ¶¶ 12-19.

[6]    O'Toole was the acting Chief of Police on the date in question.

Count 9: Intentional infliction of emotional distress in violation of Missouri law against the Defendant Officers;

Count 10: Negligent infliction of emotional distress in violation of Missouri law against the Defendant Officers;

Count 11: Vicarious liability under the City Charter against O'Toole and Charlene Deeken, Director of Public Safety for the City;

Count 12: Excessive force under the Fourth and Fourteenth Amendments against the Defendant Officers;

Count 13: Failure to intervene in the use of excessive force against the Defendant Officers and O'Toole;

Count 14: Battery in violation of Missouri law against the Defendant Officers; and

Count 15: Conversion in violation of Missouri law against the Defendant Officers.

All Defendants except the City seek to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. They also assert qualified immunity under federal law and official immunity under state law.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Hoag*, 868 F.3d at 671 (citation omitted).

**Exhibits Attached to Earlier Complaints**

Unlike his prior complaints, Alston's Second Amended Complaint does not include exhibits. Defendants assert the Court should still consider, for the purposes of this motion, certain exhibits attached to the prior complaints, by finding them necessarily embraced by the complaint, or by taking judicial notice of them. The exhibits referenced by Defendants are the transcript from the preliminary injunction hearing in another case arising out of police handling of the *Stockley* protests, *Ahmad v. St. Louis*, No. 4:17 CV 2455 (E.D. Mo.), a declaration of Rossomanno filed in *Ahmad*, and a video of the events in question.

As other judges in this District have held with respect to the same argument raised in the related cases, the Court cannot consider the exhibits attached to the earlier complaints. *See, e.g.*, *Ortega v. City of St. Louis*, No. 4:18 CV 1576 DDN, 2021 WL 3286703, at \*8-9 (E.D. Mo. Aug. 2, 2021). "When a plaintiff files an amended complaint, the original complaint is superseded and has no legal effect." *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second amended complaint, the first amended complaint (and its attached exhibits) became a legal nullity.").

Nor will the Court take judicial notice of the content of the exhibits. Federal Rule of Evidence 201(b) allows a court to take judicial notice of "a fact that is not subject to

reasonable dispute" either because it is generally known within the court's jurisdiction or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  The facts that Defendants ask the Court to take judicial notice of, such as that the "crowd had disregarded repeated orders to disperse" (ECF No. 135 at 6) are disputed by Alston.  *See Ortega*, 2021 WL 3286703, at *9.

**Individual Defendants Against Whom No Specific Allegations are Made**

As Defendants concede, Alston alleges specific misconduct by Defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno and Jemerson in their supervisory roles.  *See, e.g.*, ECF 130 at ¶¶ 50, 52-53, 98, 108, 203, 289.  Alston also alleges specific misconduct involving direct contact between himself and Defendants Marks, Myers, and Long.  *Id.* at ¶¶ 154, 156-63, 152-164.

But as to the other named Defendants, whom Alston refers to collectively as "Supervisor Officers," Alston merely alleges that they were "employed as senior officers with the SLMPD during the events of September 17, 2017," and that "[a]ccording to the City's own documents, Supervisor Officers supervised SLMPD Officers during the events in question, directed the police officers in their command to arrest the persons at the intersection of Washington and Tucker, and knew or should have known that there was no probable cause for the arrests of Plaintiff and that there was no legal justification to use force against Plaintiff."  *Id.* at ¶ 17.

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation."  *Burbridge v. City of St. Louis, Missouri*, 2 F.4th 774, 782 (8th Cir. 2021) (citations omitted).  Faced with a similar pleading in related

8

case *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 WL 677909 (E.D. Mo. Feb. 22,

2021), Judge Catherine D. Perry held:

> Defendants cannot be held liable merely because they were employed by the
> SLMPD on the night some members of that department may have violated
> plaintiffs' rights—liability under § 1983 requires proof of a causal link
> between *each* defendant and the *specific wrongs* that defendant committed.
> Put differently, asserting broad, sweeping allegations that a group of
> defendants committed constitutional misconduct is not sufficient to satisfy
> plaintiffs' pleading obligations as to each defendant within that group.   Absent
> specific and plausible factual allegations, plaintiffs' claims are merely legal
> conclusions couched as factual allegations.   Moreover, plaintiffs' vague
> allegations fail to provide each defendant with fair notice of what the claim is
> and the grounds upon which it rests.

2021 WL 677909, at *4–5 (emphasis in original) (internal citations omitted)  *Cf. Burbridge*,

2 F.4th at 781 (affirming the district court's finding that it was not fatal to the plaintiff's

case that the plaintiff could not identify which individual officers "landed the blows,"

where there was no dispute each of the officers participated in the arrest and use of force).

The undersigned agrees with Judge Perry's analysis and will dismiss without prejudice the

individual defendants against whom no specific allegations are made.

**Qualified Immunity**

"Qualified immunity shields a government official from suit under § 1983 if his

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019)

(citation omitted).  Officials are entitled to qualified immunity  "unless (1) the evidence,

viewed in the light most favorable to the plaintiffs, establishes a violation of a

constitutional or statutory right, and (2) the right was clearly established at the time of the

violation, such that a reasonable officer would have known that his actions were unlawful."

*Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012).  Qualified immunity serves to protect "all but the plainly incompetent or those who knowingly violate the law." *Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017).

    I.     Unlawful Seizure (Counts 1 and 2)

       Alston alleges that his kettling and arrest were unlawful seizures in violation of his Fourth, First, and Fourteenth Amendment rights.  The remaining Defendant Officers[7] argue they had probable cause to arrest Alston and, as such, did not violate Alston's constitutional rights and are entitled to qualified immunity.

       "A warrantless arrest does not violate the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause."  *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (citations omitted).  "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. There is arguable probable cause even where an officer mistakenly arrests a suspect believing it to be based in probable cause if the mistake is objectively reasonable."  *Id.* (citations omitted) However, an arrest made without probable cause and in response to protected speech does not warrant qualified immunity, as "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

---

[7]     These are Defendants Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno, Jemerson, Marks, Myers, and Long (hereinafter, the "Remaining Defendant Officers").

The Remaining Defendant Officers base their argument for probable cause primarily
on *Bernini v. City of St. Paul*, which considered Fourth Amendment challenges to mass
arrests and affirmed that probable cause "is satisfied if the officers have grounds to believe
all arrested persons were a part of the *unit* observed violating the law." *Bernini*, 665 F.3d
at 1003 (emphasis in original) (citation omitted). However, this Court is persuaded by
Chief Judge Rodney W. Sippel's analysis in *Baude v. City of St. Louis*, 476 F. Supp. 3d
900, 910 (E.D. Mo. 2020), another case arising out of police response to *Stockley* protest
activity at the intersection of Washington and Tucker, which distinguished *Bernini* and
concluded that the officers here did not have reasonable grounds to believe that the
individual arrestees were part of a unit observed violating the law.

As Judge Sippel noted, unlike in *Bernini*, the crowd here was not chanting or
marching in unison. *Baude*, 476 F. Supp. 3d at 910. Nor did the crowd arrive to the area at
the same time. Rather, Alston alleges that he and others entered the intersection hours after
the initial dispersal orders were given. By the time that officers arrested everyone present
at the intersection, the crowd included those who, like Alston, had no reason to suspect that
the gathering could be unlawful.

As was observed in *Baude*, 476 F. Supp. 3d at 910, a key factor in the court's
analysis in *Bernini* was the officers' attempt to sort out who had been part of a unit acting
unlawfully and who had been swept into the crowd later on. *See Bernini*, 665 F.3d at 1004.
Taking Alston's allegations as true, no such attempt was made by the Remaining Defendant
Officers; nor did the circumstances justify such a failure. The crowd at the intersection,
which included neighborhood residents, onlookers, and journalists, was relatively calm. At

the time of the arrest, officers were not facing any credible threat of force to themselves or

to property, and the only reports of violence or property damage occurred much earlier in

the day in a different part of the city.  Though some protestors continued to voice criticisms

of the police, at no point did these critiques rise to the level of threats of violence.  In these

circumstances, a mass arrest of all present, without trying to determine who was disobeying

the dispersal orders and who was unaware that they were issued, undermines any claim of

arguable probable cause.

Furthermore, the Remaining Defendant Officers have failed to establish that the

crowd was acting unlawfully.  The impeding traffic, unlawful assembly, and peace

disturbance statutes on which these Defendants rely all require a certain level of knowledge

and willful or purposeful conduct that is plainly contradicted by Alston's allegations.  *See*

Mo. Rev. Stat. §§ 574.010(2), 574.040, 574.060.  Taking Alston's allegations as true, the

Remaining Defendant Officers lacked even arguable probable cause to believe the statutes

cited had been violated.  These Defendants are thus not entitled to qualified immunity.

Next, the Remaining Defendant Officers invoke *Burbridge v. City of St. Louis*, 430

F. Supp. 3d 595 (E.D. Mo. 2019) in support of their argument for qualified immunity.

*Burbridge* arose out of the same incident and, on summary judgment, the court held that the

defendants were entitled to qualified immunity regarding the claim of unlawful arrest.

However, the decision in *Burbridge* benefitted from further factual findings that have yet to

develop in this case, including undisputed evidence demonstrating that individuals threw

objects at officers and officers gave dispersal orders through a public address system.  430

F. Supp. 3d at 610-11.  Based on that evidence and the record as a whole at the summary

judgment stage, the defendants in *Burbridge* were able to show that the group was acting in concert and that their concerted action was in violation of city ordinances.  The Remaining Defendant Officers here have not made such a showing on the pleadings alone.

Finally, the Remaining Defendant Officers argue that Alston's allegations are insufficient to establish Boyher, Jemerson, Karnowski, and Rossomanno's supervisory liability for the unlawful arrests, and that other officers cannot be held liable because they relied on their superiors' directives.[8]  The same arguments were raised in the related cases arising from the mass arrests at Washington and Tucker, and the judges in this District have uniformly rejected them.  *E.g.*, *Ortega*, 2021 WL 3286703, at \*12; *Davis v. City of St. Louis*, No. 4:18CV1574 HEA, 2021 WL 4148331, at \*8 (E.D. Mo. Sept. 13, 2021).

The undersigned will do the same.  Alston's Second Amended Complaint specifically alleges that Karnowski, Rossomanno, and Jemerson directed individuals towards Washington and Tucker; Long pepper-sprayed Alston under the observation and direction of Jemerson and Rossomanno; and Boyher and Karnowski, along with Howard and Leyshock, put Sachs's mass arrest plan into action.  *See, e.g.*, ECF No. 130 ¶¶ 50, 98, 154.  These are sufficient, specific allegations to establish that these Defendants participated in Alston's allegedly unlawful arrest.[9]

---

[8]     The Remaining Defendant Officers assert that "Plaintiff himself ascribes the plan to execute a mass arrest to defendants Leyshock, Sachs and Howard."  ECF No. 135 at 8.

[9]     O'Toole is not named in Counts 1 or 2 (unlawful arrest) or Count 12 (excessive force), as he is not among the officers defined as "Defendant Officers." ECF No. 130 at pp. 2 n.1, 37-39, 54.  However, he is named in Count 13, for Failure to Intervene in Use of Excessive Force.  *Id.* at p. 55.  As part of that count, Alston specifically pleads that O'Toole was in the "Real Time Crime Center" during all of the events in question, was

Neither can the Remaining Defendant Officers escape liability by claiming that they acted on the orders of their superiors.  The Eighth Circuit has held that an officer may rely on an assurance of probable cause from another officer so long as that reliance is objectively reasonable.  *See Bell v. Neukirch*, 979 F.3d 594, 609 (8th Cir. 2020); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017).  Based on Alston's allegations, it would have been unreasonable for these officers to rely on the assurance of their superiors that the crowd was not dispersing.  There is no legal support for the proposition that "a government official is immune if a superior instructs him to engage in unconstitutional conduct."  *Quraishi v. St. Charles Cty.*, 986 F.3d 831, 837 (8th Cir. 2021).  The Court will thus deny the motion to dismiss Counts 1 and 2 as to the Remaining Defendant Officers.

## II.    Excessive Force (Count 12)

Alston alleges that Defendant Officers used excessive force against him when they kettled him without warning, pepper-sprayed him multiple times, kicked and hit him while he was compliant and laying on the ground, painfully zip-cuffed him, and yanked him by the hair while he was restrained.  The Remaining Defendant Officers argue that they are qualifiedly immune from liability because: (1) Alston does not sufficiently allege that

---

communicating with officers on the ground, was monitoring and had approved the kettling and mass arrest, witnessed the force deployed on Alston and the other arrestees, and failed to intervene.  ECF No. 130at ¶¶ 289-291.  These allegations are specific enough to plausibly hold O'Toole liable for failure to intervene.  *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) ("[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment . . . [provided that] the officer observed or had reason to know that excessive force would be or was being used.") (internal citations omitted).

supervisory officers Leyshock, Howard, Sachs, Boyher, Jemerson, and Rossomanno, knew that other officers were using excessive force; (2) if they did know, it was reasonable for them to believe that the use of force was necessary; and (3) it was "not clearly established at the time that the use of pepper spray, tight handcuffing, arm twisting, or brief dragging of an arrestee constitute anything more than de minimis use of force."  ECF No. 135 at 9.

Again, the undersigned is persuaded by the reasoning of other judges in this District faced with nearly identical arguments to deny qualified immunity on Alston's excessive force claim except to the extent the claim relies on kettling or tight zip-cuffing.  *See, e.g.*, *Ortega*, 2021 WL 3286703, at \*13-14; *Davis*, 2021 WL 4148331, at \*9; *see also Street*, 2021 WL 677909, at \*6; *Baude*, 476 F. Supp. 3d at 914.

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances."  *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (internal citations omitted).  In applying this reasonableness standard, the Court must evaluate the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," as "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014).

"[T]he unreasonableness of the force used, not the nature of the injury is the relevant inquiry."  *Baude*, 476 F. Supp. 3d at 914 (citing *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011)).  However, "[a] de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show

15

only a corresponding de minimis use of force." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019). Factors the courts have considered in analyzing the reasonableness of force include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the plaintiff] is actively resisting arrest or attempting to evade arrest by flight." *Peterson*, 754 F.3d at 600.

At the time of the events in question, it was "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499. It was also clearly established that it is unreasonable to use pepper spray on a non-resisting, non-fleeing individual suspected of a non-violent misdemeanor. *Tatum v. Robinson*, 858 F.3d 544, 548-550 (8th Cir. 2017); *Johnson v. Carroll*, 658 F.3d 819, 827-28 (8th Cir. 2011) (holding that pepper spraying and throwing a non-violent, non-threatening suspected misdemeanant to the ground was unlawful). Finally, it was clearly established that "the use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment." *Krout v. Goemmer*, 583 F.3d 557, 566 (8th Cir. 2009); *Blazek v. City of Iowa, City*, 761 F.3d 920, 925 (8th Cir. 2014) (holding it was clearly established that jerking a non-resisting and handcuffed detainee up by the arms with sufficient force to injure his shoulder was "[a] gratuitous and completely unnecessary act of violence [that] violates the Fourth Amendment").

In light of this precedent, the Remaining Defendant Officers that are alleged to have deployed pepper spray against Alston, kicked and hit Alston while he was laying on the ground, and yanked him by the hair while he was cuffed—all while Alston was purportedly

being detained for non-violent misdemeanors and was not fleeing, posing a threat to anyone, or resisting arrest in any way—was not objectively reasonable.  *See Ortega*, 2021 WL 3286703, at \*13-14; *Davis*, 2021 WL 4148331, at \*9; *see also Street*, 2021 WL 677909, at \*6; *Baude*, 476 F. Supp. 3d at 914.

As indicated above, Alston also plausibly alleges that supervisory officers Leyshock, Howard, Sachs, Boyher, Jemerson, and Rossomanno were present at the scene and either ordered the use of force or witnessed officers using excessive force and failed to intervene. At this stage of the litigation, such allegations are sufficient to hold these officers liable and deny qualified immunity.  *See Baude*, 476 F. Supp. 3d at 913-13; *Street*, 2021 WL 677909, at \*5-6; *Ortega*, 2021 WL 3286703, at \*14; *Davis*, 2021 WL 4148331, at \*9.

However, the undersigned agrees with Judges David D. Noce and Henry E. Autrey in *Ortega* and *Davis*, respectively, that it was not clearly established at the time that kettling detainees, which does not itself involve the use of force, or applying zip cuffs too tightly rises to the level of excessive force.  *See Ortega*, 2021 WL 3286703, at \*14; *Davis*, 2021 WL 4148331, at \*9; *see also Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied.") (internal citations omitted).  Therefore, the Remaining Defendant Officers are entitled to qualified immunity on these portions of Alston's excessive force claim.

III.    Civil Conspiracy Claim (Count 3)

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one

of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted).

The Remaining Defendant Officers and O'Toole assert that they are entitled to qualified immunity on Alston's conspiracy claim because the law surrounding the application of the intracorporate conspiracy doctrine to § 1983 claims is not clearly established.  The intracorporate conspiracy doctrine provides that  "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). "The doctrine stems from basic agency principles that attribute the acts of a corporation's employees to the corporation itself, so that all their acts are treated as the acts of a single legal entity." *Burbridge*, 2 F.4th at 783 n.6.

Though debate surrounds whether the intracorporate conspiracy doctrine should apply in civil rights cases where the acts of a municipal employee are not attributable to the municipality itself, the Eighth Circuit has already extended the intracorporate conspiracy doctrine to § 1985 claims.  *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 905 (E.D. Mo. 2017) (citing *L.L. Nelson Enters. v. City of St. Louis*, 673 F.3d 799, 812 (8th Cir. 2012)). The Eighth Circuit has not decided whether to extend the doctrine to § 1983 conspiracy claims, but other circuits have applied the doctrine to § 1983 conspiracy claims.  *See Jackson v. City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019), *Grider v. City of Auburn*, 618 F.3d 1240, 1261-62 (11th Cir. 2010).  The question of whether the doctrine should apply to § 1983 claims has arisen several times in this District, but judges have

declined to address its validity in the absence of clear direction from the Eighth Circuit. *E.g.*, *Aldridge v. City of St. Louis*, No. 4:18-CV-1677-CAS, 2019 WL 1695982 at \*8 (E.D. Mo. Apr. 17, 2019).

With this legal backdrop in mind, the undersigned is persuaded by Chief Judge Sippel's opinion in *Baude* that the Remaining Defendant Officers and O'Toole are entitled to qualified immunity on Count 3 because the law regarding the application of the intracorporate conspiracy doctrine in § 1983 cases was not clearly established. *See Baude*, 476 F. Supp. 3d at 916 (granting qualified immunity on the § 1983 civil conspiracy claim); *but see Street*, 2021 WL 677909, at \*8 (disagreeing with *Baude* and holding that "a reasonable SLMPD officer would have known that he or she could be subjected to § 1983 conspiracy liability by conspiring with other SLMPD officers to violate plaintiffs' clearly established constitutional rights"); *Ortega*, 2021 WL 3286703, at \*15 (same); *Davis*, 2021 WL 4148331, at \*10 (same).[10]

In *Ziglar*, the Supreme Court held that the fact that courts were divided as to whether the intracorporate-conspiracy doctrine should apply to conspiracy claims under § 1985 "demonstrates that the law on the point is not well established."  137 S. Ct. at 1868. *Ziglar* was decided on June 19, 2017, just before the events at issue here.  The Supreme Court explained "[w]hen the courts are divided on an issue so central to the cause of action

---

[10]     The Eighth Circuit cases relied upon by *Street* as recognizing a § 1983 conspiracy claim against police officers did not address the potential application of the intracorporate conspiracy doctrine. *See, e.g.*, *Small v. McCrystal*, 708 F.3d 997, 1010 (8th Cir. 2013); *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 853 (8th Cir. 2013).

alleged, a reasonable official lacks the notice required before imposing liability." *Id.* The undersigned cannot discern a meaningful distinction between the nature of the uncertainty surrounding the doctrine's applicability to § 1985 conspiracies and its applicability to § 1983 conspiracies. The law is unsettled in both contexts, and as such, the Court is bound by *Ziglar* to hold that qualified immunity applies. The Court will thus dismiss Count 3.

**State-Law Claims**

Alston brings tort claims of assault, battery, false arrest, abuse of process, malicious prosecution, intentional and negligent infliction of emotional distress, and conversion. The Remaining Defendant Officers argue that the state-law claims are barred by official immunity for the same reasons advanced in support of qualified immunity. They further argue that the claims of abuse of process, malicious prosecution, and conversion are insufficient as a matter of state law, and that the claims of emotional distress are duplicative of the claims of assault and battery. Finally, they argue that the Court should decline to exercise supplemental jurisdiction over Alston's "Vicarious Liability Under City Charter" claim against Defendants O'Toole and Deeken (Count 11).

I.    Official Immunity

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions . . . ." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citing *Davis v.*

*Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. 2006)).  The same is true for the investigation of a crime and arrest.  *See Reasonover,* 447 F.3d at 585.

But official immunity "does not apply to those discretionary acts done in bad faith or with malice."  *Id.*  "Acting with malice requires an actual intent to cause injury."  *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017).  "A finding of bad faith embraces more than bad judgment or negligence.  It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive."  *Id.*

Alston's allegations sufficiently demonstrate that the Remaining Defendant Officers acted with malice in carrying out the mass arrests and use of force here. The undersigned agrees with the other judges in this District that have found that "the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests not related to police misconduct may reasonably support a finding of malice or bad faith." *Ortega*, 2021 WL 3286703, at *17 (citing *Street*, 2021 WL 677909 at *10).  Alston has also alleged facts suggesting that the use of force was in response to his actions in filming the events.  The Remaining Defendant Officers are thus not entitled to official immunity.

II.     Abuse of Process, Malicious Prosecution, and Conversion (Counts 7, 8 & 15)

The undersigned, like the other judges in this District that have considered the issue, reaches a different conclusion with respect to Alston's abuse-of-process, malicious-prosecution, and conversion claims.[11]

---

[11]     To the extent that the Remaining Defendant Officers argue that Alston failed to adequately allege his claims for battery (Count 14), assault (Count 5), and false arrest

Under Missouri law, the torts of abuse of process and malicious prosecution both require the initiation of legal proceedings against the plaintiff by the defendant. *See Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. 2019) (elements of abuse of process); *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994) (elements of malicious prosecution).

Alston does not allege facts to demonstrate that any of the Remaining Defendant Officers or O'Toole[12] initiated or participated in initiating legal proceedings against him. Alston does not allege that he was ever formally charged with a crime or that any of the Remaining Defendant Officers or O'Toole actually participated in issuing the summons. Alston's allegations against these Defendants are limited to their conduct in effecting the arrests. As other judges in this District have held, such allegations are insufficient to state a claim for abuse of process or malicious prosecution. *See Street*, 2021 WL 677909 at *10 (dismissing abuse-of-process and malicious prosecution claims where, "[a]lthough plaintiffs allege that every defendant 'assisted in the filing of charges against plaintiffs,' the factual allegations do not show that defendants' interactions with plaintiffs went beyond their arrests."); *Ortega*, 2021 WL 3286703, at *18 (same); *Davis*, 2021 WL 4148331, at *10 (same). Therefore, the Court will dismiss Counts 7 and 8.

---

(Count 6), the Court rejects their argument. These claims, like their federal counterparts under § 1983 (unlawful arrest and excessive force) are adequately pled, for the reasons discussed above. *See Street,* 2021 WL 677909, at *10; *Ortega*, 2021 WL 3286703, at *17; *Davis*, 2021 WL 4148331, at *10.

[12] O'Toole is named in both the abuse-of-process and malicious prosecution claims based on his role as the acting Chief of Police.

Alston likewise fails to state a claim for conversion because he does not identify which Defendant took his property, instead asserting that "SLMPD officers" in general seized his camera. *E.g.*, ECF No. 130 at ¶¶ 307-14. These allegations are insufficient to support a claim against any of the Remaining Defendant Officers. Therefore, the Court will dismiss Count 15. *See Street*, 2021 WL 677909, at \*11 (dismissing conversion claims where the plaintiffs asserted that property was taken by officers but did not identify which officers participated in the conversion).

III.    Intentional and Negligent Infliction of Emotional Distress (Counts 9 and 10)

The undersigned also agrees with the other judges in this District that have held that the intentional infliction of emotional distress claim may proceed at this stage under Federal Rule of Civil Procedure 8(d)(3) as a claim pled in the alternative, *see Ortega*, 2021 WL 3286703, at \*19; and that the claim for negligent infliction of emotional distress is not duplicative of the assault or battery claims, *see Street*, 2021 WL 677909, at \*11. Therefore, the Court will deny Defendants' motion to dismiss these claims.

IV.    Vicarious Liability Under City Charter (Count 11)

In Count 11, Alston alleges that O'Toole and Deeken are vicariously liable under the City's Charter because Article VIII, Section 5 of the Charter states that "[e]ach head of a department, office or division ***shall*** be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." ECF No. 130 at ¶ 273 (emphasis in original). Alston alleges that O'Toole and Deeken were officers and employees of the Chief of Police and were acting in the scope of their employment when they committed the acts alleged.

23

As the other judges that have considered this issue have done, pursuant to 28 U.S.C. § 1367(c)(1), the undersigned will decline to exercise supplemental jurisdiction over this claim because it raises "complex and unsettled questions of state law preemption over obscure municipal ordinance." *Street*, 2021 WL 677909, at \*14; *Ortega*, 2021 WL 3286703, at \*19; *Davis*, 2021 WL 4148331, at \*11. Such novel issues of state law should be addressed by the state courts in the first instance.

## CONCLUSION

For the reasons stated above, the officers against whom no specific allegations were made will be dismissed from this action without prejudice. Alston's civil conspiracy claim (Count 3) and the portions of his excessive force claim (Count 12) relating to kettling and zip-cuffing too tightly will be dismissed with prejudice on the basis of qualified immunity. Alston's state-law abuse-of-process, malicious-prosecution, and conversion claims (Counts 7, 8, and 15) will be dismissed with prejudice for failure to state a claim. Finally, the Court will decline to exercise supplemental jurisdiction over Count 11, which is the only claim asserted against Defendant Deeken, and Count 11 and Defendant Deeken will also be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 134) is **GRANTED in part and DENIED in part** as set forth herein:

i.  All defendants except for the City of St. Louis and individual defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno, Jemerson, Marks, Myers, and Long are **DISMISSED from this action without prejudice.**

24

ii.     Counts 3, 7, 8, and 15 are **DISMISSED in their entirety, with prejudice.**

iii.    Count 12 is **DISMISSED in part, with prejudice,** solely as it relates to
        Defendants' alleged acts of kettling and applying zip cuffs too tightly.

iv.     Supplemental jurisdiction under 28 U.S.C. § 1367 over Count 11 is denied and
        Count 11 is **DISMISSED without prejudice**.

In all other respects, the motion to dismiss is **DENIED**.


_____

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE


Dated this 30th day of September, 2021.