IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FAREED ALSTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:18-cv-01569 AGF |
| CITY OF SAINT LOUIS, MISSOURI, et. al., | ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE DAIGLE**

Defendants' Response to Plaintiff's Motion to Exclude Defense Expert Daigle fails to directly address the glaring problems in Daigle's testimony. In fact, the Response provides this Court with no answers, no way to deal with the fact that Daigle 1) is unqualified to testify, 2) admitted that his determinations about police behavior are not based on the law, and 3) admitted that he did not consider the facts and evidence in this case when forming his opinion. As such, these arguments are unrefuted and Plaintiff's Motion to Exclude should be granted in its entirety.

**Law Regarding Experts**

The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *McKnight ex rel. Ludwig v. Johnson Controls, Inc*., 36 F.3d 1396, 1408 (8th Cir. 1994). And given that "[e]xpert evidence can be both powerful and quite misleading, the Court must be particularly careful to exclude such testimony if it might lead the jury to simply rely on the expert's opinion and surrender its own common sense." *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir.1995) (citations omitted).

1

To demonstrate the expert testimony is relevant, "the proponent must show that the expert's reasoning . . . was applied properly to the facts at issue." *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010) (quoting *Barrett v. Rhodia, Inc*., 606 F.3d 975, 980 (8th Cir. 2010)).

### I.      Mr. Daigle is Unqualified to Be an Expert.

In their Response, Defendants indicate that on "paper" Eric Daigle is a qualified expert. But a review of Daigle's testimony demonstrates why Defendants focus solely on Daigle's CV and his written report.

Daigle's testimony is biased – and in a way that the trier of fact will be misled. The truth is that Daigle is appearing in this case as a police officer – a person who joins the SLMPD when opining and regularly says "we" in a display, that despite never having been a SLMPD officer, he considers himself one of them. He is not appearing as an unbiased expert who will help the trier of fact – he has joined the ranks and will talk about the SLMPD as if he is a member – or an advocate.  Indeed, the fact Daigle is a lawyer makes him more well suited as an attorney in the case than an expert.

When testifying, Daigle is still an officer, or a lawyer for officers, or both.  But an expert he is not. A glance at Daigle's CV reveals his publications and training have only been for police officers. He has never represented an individual who has sued a police officer, and his literature has never been written for anyone except the police and has never been published.

These limitations in experience and reputability creep in more fully when his testimony is considered. He admits that all of his opinions are premised on inferences and assumptions that benefit his client, rather than an honest evaluation of the circumstances of this case.  This overtly ignores any facts, many undisputed, that would weigh in favor of Plaintiff.  It is the equivalent of a scientific expert ignoring lab tests that aren't favorable to his opinion.  Consider the testimony

2

below, in which Daigle asserts submission to an order, or placing one's arms up and surrender, could justify force.

> **Q.** Well, I mean, his arms are up. If he's been instructed --
> **A**. Everybody's arms were up. What does that mean? Just because your arms are up doesn't mean that you are complying. If the order is to get on the ground that is the order, get on the ground. They didn't ask him to put his hands up, they said get on the ground. He did not comply with the order, which is why hands up in the area are a very dangerous application is you're going to arrest somebody. They are already up in the area which means it doesn't take much to throw a punch to do a those things. The instruction was get on the ground and he didn't comply with the instruction.
> **Q**. He was instructed to get on the ground?
> **A**. **I have to assume so.** That's why the chemical use was – that's why the chemical was deployed. (Daigle Deposition, pg. 149:1-23) (emphasis added).

This statement says it all – "I have to assume so." This statement demonstrates the problem; Daigle is not honestly evaluating the actions of the police to determine the legitimacy of the facts and circumstances in this case. He "has to assume" the police were right, and then devise an opinion. And it is clear why – once he stepped into the role of "we," any honest evaluation of police behavior that was to aid the jury went out the window. He out of hand dismisses any scenario where the Defendants could be at fault. His "expert" analysis is amazing when broken down. First, he is presented with video evidence of a compliant person. Second, without pointing to any evidence at all, he contradicts common sense by arguing that placing your hands up is in contradiction to police orders. Third, he assumes that officers were telling people to get to the ground at the moment without being able to cite anything to support this very important fact. Fourth, when confronted about the lack of an evidence to support his claim, he admits it is an assumption. Finally, he relies on his admitted assumption and disregards the video evidence before him to make his expert determination: the use of pepper spray is justified. These logical gymnastics are supposed to "assist or be helpful to the trier of fact?" Surely, not.

As such, it is clear that Daigle is unqualified to be an expert in this case.

**II.     Mr. Daigle's Testimony as to What Actions Are Appropriate Are Contrary to the Law.**

It is interesting to note that the only testimony that Defendants put forth to support that Daigle would not mislead the jury. Defendants highlighted the following passage:

> 20 You know, that's that double-edged sword that
> 21 I talked about, which is, you know, if the officers
> 22 do something then they are wrong, if they don't do
> 23 something and business windows get destroyed or fires
> 24 get set then **we're** wrong.
> (Pl. Ex. 2, Daigle Depo., 53:3-54:2) (emphasis added).

If the best the Defendants can do is a passage in which Daigle says officers (including himself) are damned if they do and damned if they don't, maybe there isn't much more to say.

Beyond the bias, this passage highlights a couple of other problems. First, Daigle is again talking in "we" form. He was not there that night and is not a member of the SLMPD. His constant testimony as "we" would be misleading and confusing to the jury, if this Court were to allow him to testify in an "expert" role.

Second, Daigle is considering facts to justify the kettle in his reference to "broken windows" that were 1) hours before, 2) in a different location, and 3) committed by a person who has already been arrested. He makes reference to this as justification for the kettle even though his testimony is that at the kettling, there was no violence, no weaponry, and no force.

> **Q**. You just said that there wasn't any documentation from either party showing that there was violence perpetrated by the citizens, correct?
> **A**. Perpetrated by the citizens before the unlawful assembly, right. (Daigle Deposition, pg. 125: 15-20).
> **Q**. So, in terms of the Washington and Tucker protestors, when you reviewed the evidence was there any indication that people were using force against each other or officers when you reviewed the materials you were provided?
> **A**. No. (Daigle Deposition, pg. 45:18-23)
> **Q**. Okay. In your view of all the evidence, and let's do the same timeframe, from 10:30 on, did you see anybody there as a protestor using or brandishing any weaponry?
> **A**. I did not in the information I received.

4

>**Q.** Okay. Same timeframe, did you see anyone knocking anyone else down, roughhousing, fighting, anything of that nature?
>**A**. None of that conduct in and of itself was described. (Daigle Deposition, pg. 42: 12-21)

The "totality of circumstances" is based on the situation in front of an officer. The law does not allow officers to sew in past acts, in different locations, by others to influence whether the people present are criminals, to justify arrests. Especially when the crowd in front of you, by all accounts, is not committing a crime. In essence, Daigle's testimony is that he thinks it is perfectly acceptable to punish citizens for the crimes of others. And he makes this bold claim without pointing to any law that supports this un-American idea. Daigle's assessment of the totality of the circumstances is a) legally impermissible, b) factually wrong, c) unsupported by any authority, and d) an improper and uninformed legal opinion that would mislead a jury.

This is the pattern of Daigle's testimony. As such, it is clear that Daigle should not be an expert in this case.

### III.     Mr. Daigle's Testimony is Not Based on Sufficient Facts.

"Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Prod., Inc*., 270 F.3d 681, 687–88 (8th Cir. 2001) citing *Bogosian v. Mercedes–Benz of N. Am., Inc.,* 104 F.3d 472, 479 (1st Cir.1997) (finding testimony of the expert and the plaintiff must be sufficiently related); *Daubert v. Merrell Dow Pharm., Inc.,* 43 F.3d 1311, 1317 (9th Cir.1995) (addressing whether opinion was developed naturally out of research or solely for litigation); *Claar v. Burlington N.R. Co.*, 29 F.3d 499 (9th Cir.1994) (discussing whether the expert accounts for obvious alternative explanations).

5

Here we have proof that Daigle ruled out other alternative explanations and did not sufficiently relate testimony to the facts of the case. In fact, Daigle's testimony is replete with indications that he did not take any facts contrary to the police narrative into account when developing his opinions in this case (see also the arguments in point I, regarding his assumptions for the police). His testimony was solely to benefit Defendants' litigation posture and not for an accurate analysis of what occurred that night. For example:

> Q. Well, we have multiple, probably close to a dozen people who testified that they saw nobody acting violent within this group, including officers. Did you take that into account when determining whether dragging somebody by their face is appropriate?
> **A. It's not enough information to come to a conclusion.** (Daigle Depo. Pg. 124, 1-8).

…

> Q. How big do you allege the group was, when they gave the dispersal order how many protestors were there?
> **A. I don't know**.
> Q. So, are you suggesting -- how many police officers were there at the time the dispersal order was given?
> **A. I don't know.** (Daigle Depo. Pg. 130, 8-15).

…

> Q. You heard multiple people say, they are shoving people now into the circle, into the kettle, right? You heard that, right?
> **A. That is true, I heard that.**
> Q. Did you take those statements into account at all when you were making your expert opinion about whether anything was done incorrectly?
> **A. No. Because I would need way more information than those statements made by that individual.**
> Q. Right. So, you disregarded that, correct?
> **A. I didn't disregard it. I said I need more information.**
> Q. Do you recall ever noting that somebody was pushed into the kettle during your review of these video?
> **A. I saw that on the video, yes.**
> Q. Did you ever write it down in any of your notes?
> **A. I don't need to write it down, I saw it.**
> Q. Did you ever write it down in any of your notes?
> **A. I did not write it down in any of my notes.**
> Q. You admit that there were dozens upon dozens of videos, correct?

**A. Yes.**
Q. Sitting here today you don't recall seeing an officer trip a handcuffed suspect and throw him to the ground, correct?
**A. I do not recall.**
Q. When you're watching all these videos, these dozens upon dozens of videos are you taking notes?
**A. No.**

Daigle admits that he did not take notes about the videos, and he admits that anytime he sees behavior contrary to the positive police narrative, he disregards that information because he needs "more information." He does not even attempt to disguise the fact that he is not considering alternative explanations for the events on September 17, 2017.

As such, it is clear that Daigle is unqualified to be an expert in this case.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion to Exclude the Testimony of Eric Daigle.

Date: August 25, 2022

Respectfully submitted,

KHAZAELI WYRSCH, LLC

By: /s/ James R. Wyrsch
James R. Wyrsch, MO53197
Javad M. Khazaeli, MO53735
911 Washington Avenue, Suite 211
St. Louis, Missouri 63101
(314) 288-0777
james.wyrsch@kwlawstl.com
javad.khazaeli@kwlawstl.com

Alicia Campbell, MO59586
CAMPBELL LAW, LLC
3407 S. Jefferson Avenue
Saint Louis, MO 63118
888-588-5043
314-400-7701 (fax)

*Attorneys for Plaintiff*

7